170 So.2d 545 (1965)
Luther D. McCORQUODALE, Plaintiff-Appellee,
v.
Jessie C. WATSON et al., Defendants-Appellants-Appellees.
No. 1324.
Court of Appeal of Louisiana, Third Circuit.
January 5, 1965.
Hall, Raggio & Farrar, Lake Charles (R. W. Farrar, Jr., Lake Charles, of counsel), for defendants-appellants.
Nathan A. Cormie & Associates, by Robert Morgan, Lake Charles, for plaintiff-appellee.
Patin & Patin, by John A. Patin, Lake Charles, for defendant-appellee.
Before TATE, SAVOY, and CULPEPPER, JJ.
TATE, Judge.
The plaintiff was injured while a passenger in an automobile driven by the defendant Watson, which collided with a vehicle driven by McAdams, a codefendant. The plaintiff sues to recover for his personal injuries from these drivers and their liability insurers. The defendant Watson *546 and his insurer alone were held liable in the amount of $32,417 by a trial jury, and these defendants appeal.
The sole issue raised by these defendants' appeal is that the award of damages to the plaintiff was excessive. The only question before us is whether the award of $32,417 general damages for the plaintiff's personal injuries is excessive, since special damages are not at issue, nor is the trial jury's assessment of liability vel non as between the respective sets of defendants.
The trier of fact has much discretion in the award of general damages for personal injuries, which discretion should not be disturbed upon appellate review in the absence of an abuse of such discretion. LSA-Civil Code Art. 1934(3); Ballard v. National Indemnity Co., La., 169 So.2d 64 (Docket No. 47,152; November 13, 1964); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149.
As the Ballard case states, 169 So.2d 67, where quantum is an issue on appeal, the appellate court should "review all the facts and circumstances on which the lower court based the quantum of award, but this review is confined to determining whether there has been an abuse of the `much discretion' vested in the trial court in assessing damages. After a review of all the facts and circumstances, if the appellate court finds that there has been an abuse of discretion, the amount of the award should be increased or decreased as the case warrants. * * * The amounts of awards in so-called `similar' cases are relevant only to determine whether there has been an abuse of discretion, but for no other purposethat is, to determine whether the award is so excessive or so inadequate as to be an abuse of discretion." Or, as stated in Gaspard v. LeMaire at 158 So.2d 159, "`awards made should not be all out of proportion with previous awards made for somewhat similar injuries'"; see Rusk v. Allstate Insurance Co., La.App. 3 Cir., 167 So.2d 205 (concurring opinion), approved in Supreme Court denial of certiorari, 246 La. 877, 168 So.2d 104.
Applying this standard, we feel that a review of the record reveals the facts and circumstances set forth below upon which the trial award of general damages was based.
The plaintiff McCorquodale, 58 years of age, suffered mouth, nose, neck, chest, low back, and hand injuries as the result of the severe impact of the accident, as well as general contusions, lacerations, and bruises. The trial was held about two years after the accident. Four orthopedists, a neurosurgeon, an internist, a dental surgeon, and the initial attending physician testified as to the extent and residual of these injuries.
The preponderance of this medical evidence, based to a large extent on objective symptoms, indicates these injuries to be:
(1) A moderately severe injury to the tissues of the neck, which through tissue damage (fibrosis) has produced a permanent restriction of some ten degrees or so in the left and right turning motions of the neck. This has produced a constant stiffness of the neck, with some pain upon turning the head beyond the restriction. While the condition was somewhat painful for about eighteen months, the injury has subsided into stiffness. The permanent loss is estimated as about a 10-15 per cent disability. (The examining neurosurgeon felt that there was possibly a herniated cervical disc, based the weakness of the left index finger and thumb, see 2 below, and a narrowing of disc interspaces; but all four examining orthopedists were quite positive that there was no disc injury, and that the finger weakness was definitely attributable to tissue-injury, while the narrowing of the interspace was relatively insignificant. Due to the lack of symptoms normally attributable to a disc injury, we think that such is not proved by a preponderance of the evidence.)
(2) A 5-10 per cent residual disability of the left hand, resulting from a tissue injury *547 (fibrosis) when the left index and middle fingers were turned back when the plaintiff braced to guard himself in the impact. There is a restricted ability to close the affected finger(s). This manifests itself in a loss of grip and an inability to grasp small objects.
(3) The loss of two front teeth due to their fracture in the accident, and the replacement of them with a removable bridge. Aside from the severe pain at the time of the impact, the chief residual is discomfort and irritation in the use of the bridge, with bad breath due to food particles causing a nervous irritation in the plaintiff's work as District Engineer of the state Highway Department, which requires constant conference with public officials, contractors, and members of the public.
(4) A very mild nose deformity, not severe from a cosmetic standpoint, which has produced a depression at the bridge of the nose, resulting from a nose fracture sustained in the accident. At the time of the accident, the nose was split, and lacerations in the septum (the wall between the nostrils) had to be surgically repaired.
(5) Residual of a low back sprain, still evident at the time of trial two years after the accident. This produces soreness and stiffness upon exercise, which passes away with rest, and it causes a restriction in bending or in trying to pick up heavier objects. The condition is expected eventually to terminate.
(6) Increased nervousness as a result of the accident. Although the plaintiff, his wife, and two of his work associates testified he was obviously more nervous even two years later as the result of the accident, his family physician, who had treated him for nervousness before and after the accident, felt that there was no permanent residual in this regard, and that the accident had produced only a temporary aggravation for several weeks of his prior nervous condition.
(7) Right shoulder, chest, head bump, and leg bruises and contusions which were painful for possibly six months after the accident, producing fairly severe intermittent headaches, etc., during this interval.
(8) Severe pain at the time of the accident due to the painful nose, mouth, and hand injuries, as well as general spraining over the entire body; which pain could not be relieved by medication during the first day because of the possibility of concussion injuries.
In sum, the plaintiff is a 58-year-old man holding a responsible position as District Engineer supervising highway work in eight parishes for the state Department of Highways. His duties include a great deal of inspection and supervisory and public relations work in the field, with much paper work in the office. Although the plaintiff was only off of work due to his injuries for six weeks, nor did he seek extended medical treatment, the evidence shows the explanation for this to be that he was a superior and extremely conscientious type of man, who returned to work as soon as possible, even though suffering moderate discomfort and limitations and unable at first to work more than a couple of hours a day, in order to maintain control of the heavy responsibilities of his position.
The plaintiff has suffered no restriction in earnings as a result of the permanent residual of his injuries. Due to the nature of his duties, he can perform them efficiently, even though only with discomfort and by avoiding the more onerous physical ones. However, corroborating the plaintiff's complaints of discomfort and restrictions, the co-workers do note that the plaintiff walks much more slowly and deliberately and carries himself stiffly, as compared with his normal gait and posture before the accident. In effect, the plaintiff has been slowed down by the total of his accident-residuals, which restrict somewhat his activities at work, and which also inhibit him to a large extent from his former *548 recreational pursuits of hunting and golfing. On the other hand, the plaintiff is not in undue discomfort, and he is able to perform his duties capably and efficiently and to pursue without other restriction the other normal activities of everyday life.
As we earlier noted, in our appellate review of the trial award of $32,417 general damages for these personal injuries, we must consider only whether such award constituted an abuse of the great discretion of the trier of fact in such matters. We are to consider so-called "similar" awards, not for purposes of uniformity, but only with the view of determining whether the present award is "all out of proportion" with previous awards made for somewhat similar injuries. If measured by such standard the present award is so excessive as to constitute an abuse of the trial discretion, then the award should accordingly be decreased. See Ballard v. National Indemnity and Gaspard v. LeMaire decisions, cited above.
Reverting to the present injuries, no reported Louisiana decision contains a similar cumulation of the particular different injuries here instanced. Without at this time pretending that an award in such amount would alone be appropriate for each particular injury suffered, we note, for instance, that, if the plaintiff had sustained any one of the above injuries, awards for each such individual injury could probably be justified in the following amounts, citing typical awards for the individual injuries:
For the permanent 10-15 per cent neck disability, with stiffness and disfigurement and restriction to be suffered by the plaintiff for the remaining many years of his life expectancy, perhaps $8,000-10,000 (Kline v. Columbia Cas. Co., La.App. 2 Cir., 155 So.2d 82, syllabus 3; Self v. Johnson, La.App. 3 Cir., 124 So.2d 324); for the residual 5-10 per cent disability of the hand, perhaps $3,000-5,000 (Embody v. LeBlanc, La.App. 1 Cir., 131 So.2d 225); for the loss of two front teeth, perhaps $2,000-2,500 (McInnis v. Terry, La.App. 1 Cir., 121 So.2d 329); for the mild nose disfigurement of this male, perhaps $1,000 (Roux v. Brickett, La.App. 3 Cir., 149 So.2d 456, syllabus 3); for the moderately severe lumbosacral back sprain, producing over two years of residual discomfort, perhaps $2,000-4,000 (Cassreino v. Brown, La.App. 4 Cir., 144 So.2d 608); for the temporarily severe aggravation of a pre-existing nervous condition, perhaps $500-1,000 (Dooner v. Parish Cab Co., La.App. 4 Cir., 147 So. 2d 231).
Thus, the injuries cumulatively sustained by the plaintiff have, in the past, been typically individually awarded amounts which total in all between $16,500 and $24,500. On the other hand, to some extent there is a general overlapping of the general pain and discomfort factor in the awards which might have been made for each particular injury individually.
We have come to the conclusion that the award of $32,417 in general damages by the trial jury did constitute an abuse of discretion, as being in total out of all proportion for the awards made for somewhat similar injuries. A majority of the court has come to the conclusion that the award should be therefore reduced to $17,500, as being more in proportion with awards made for injuries producing definite but not severe permanent disabilities and restriction, together with the various other quite severe but more temporary personal injuries. See, e. g.: Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (on rehearing); Bernard v. Hungerford, La.App. 3 Cir., 157 So.2d 246, syllabus 18; Broussard v. Savant Lbr. Co., La.App. 3 Cir., 134 So.2d 369; Hidalgo v. Dupuy, La.App. 1 Cir., 122 So. 2d 639; Girouard v. Houston Fire & Cas. Ins. Co., La.App. 1 Cir., 85 So.2d 664.
For the foregoing reasons, the award for personal injuries made by the trial court is reduced to Seventeen Thousand Five Hundred and No/100 ($17,500.00) Dollars plus legal interest from date of demand; *549 and, as thus awarded, the trial court judgment is affirmed in all other respects. The costs of this appeal are to be paid by the defendants-appellants.
Amended and affirmed.