JANVIER, Judge.
This suit for damages is based on the allegations of plaintiff, William D. Flack, that he sustained serious physical injuries at about 4 o’clock in the afternoon of March 16, 1953, as he “was attempting to cross Dryades Street, from the river side to the neutral ground,” about 130 feet from the street corner in the 1800 block of Dryades Street, and that as he attempted to do so, defendant," Stephen Margiotta, negligently backed his automobile into plaintiff “knocking him violently to the street and against the curb.”
The defendants are Stephen Margiotta, the owner and operator of the car and New Amsterdam Casualty Company of Baltimore, Maryland, alleged by plaintiff to have issued to Margiotta a policy of liability insurance.
The defendants contend that the car of Margiotta, which was being backed into an open parking space at the curb of the sidewalk, did not strike plaintiff at all; that his injuries were sustained when he fell against the curb, and that the fall was not caused by the backing of the car; that there was no negligence on the part of Margiotta and, in the alternative that it appear that Margiotta was in any way at fault, that the proximate cause of the injuries which plaintiff sustained was his own contributory negligence in attempting, without looking, to cross the roadway behind the automobile of Margiotta which was being backed towards the curb, and in attempting to cross at a point other than a pedestrian crossing in violation of City Ordinance No. 18,202 C.C.S.
The evidence as to just how Flack sustained his injuries is in certain particulars conflicting, and counsel for plaintiff assert that the witnesses for defendants contradict themselves to such an extent that they should not be believed at all. We think that the slightly different versions and the slightly contradictory statements of some of defendants’' witnesses are no more than what is usually found where disputed questions of fact are involved.
*445 Counsel point to the fact that Margiotta said that for some time before the occurrence, he had known a certain witness who bore the name of Freddie, whereas Freddie, who was an important witness on behalf of defendants, said that he had not known Margiotta until the day on which it is alleged that the accident occurred. Margiotta explains that Freddie was a well known character in that neighborhood where he operated a barroom, and that he, Margiotta, frequently shopped in the vicinity and often passed Freddie’s establishment and noticed him as he passed. Under these circumstances it cannot be said that either Freddie or Margiotta was indulging in fabrication when the one said that he knew the other and the other denied it.
There is a dispute as to what another witness was doing just as the car was backed into the open space at the curb. This witness was said by some to have been sweeping the sidewalk and by others to have been draining water from a cold drink box. The duties of this witness seem to have included both and it may have been that he was in fact doing both. He may have opened the drain of the box and then started to sweep while the water was draining out.
There is also a dispute as to whether one or more persons called to Margiotta to warn him of an impending accident and also just as to what the warning call consisted of. These unimportant contradictions do no more than indicate that each witness was attempting to recount the occurrences as he remembered them.
The District Judge has, in a terse statement, set forth the facts as they may be properly gleaned from the record and we think has reached the proper conclusions on the law which is applicable to those facts:
“The evidence shows that plaintiff, an elderly gentleman about 76 years old, stepped off the sidewalk on to Dry-ades Street at a point about 130 feet from the corner of St. Andrew St.
“He contends .that when he was about two or three feet from the curb he was struck by the automobile of defendant Margiotta, who was in the act of backing his automobile into a vacant parking space.
“Plaintiff testified that he saw a negro porter on the sidewalk at the place where he decided to cross Dry-ades Street; that the negro porter was draining water of an ice box; that when he started across the street he looked to his left and continued to look to his left; he does not at any time state that he looked to his right; that he made two steps to cross, and was hit on his right leg above the knee and knocked down on the curb, (in a sitting position with his legs in the street, as testified to by other witnesses) his lower part of his body being in the street and his upper part on the curb.
“Ernest Taylor, the negro porter, testified that he was sweeping the sidewalk at the time of the occurrence (he is contradicted on this point 'by plaintiff), and that plaintiff was about two feet out in the street when he was hit.
“Margiotta denies that his automobile struck plaintiff. He is corroborated by Freddie Andrews, who also testified that Margiotta’s automobile did not strike plaintiff.
“The evidence seems to preponderate in favor of defendants, to the effect that plaintiff was not struck. The court believes that plaintiff is sincere, but mistaken. He was always looking to the left, and the court has a right to assume that, when he saw the Margiotta automobile out of the corner,of his eye, he backed up, his heels hitting the curb, tripping him, causing him to be injured as he fell. His injury was to his left hip, not his right hip. He was struck, he says, on the right side.
“Ernest Taylor, the negro porter, is also contradicted by Andrews, who tes *446 tified that he was emptying a red Coca-Cola box, not sweeping, as testified to by Taylor.
“Margiotta testified that he looked before backing into the parking space, and did everything possible to see that the space was clear; that he stopped his automobile about three feet from where plaintiff was sitting on the curb.
“Even if plaintiff was struck, the court believes that he was contributor-ily negligent in that he stepped out in the street, 130 feet from the corner, looking in one direction only, after Margiotta had looked and started to back his automobile. Plaintiff thus had the last clear chance of avoiding the occurrence, but he did not look to his right to do so.
“Plaintiff’s counsel rely upon the cases of Robichaux v. Toye Bros. Yellow Cab Co. [La.App.], 61 So.2d 264, and Neyrey v. Maillet [La.App.], 21 So.2d 158. The facts in those cases are not similar to those in the case at bar. However, counsel for defendants called the attention of the court to the body of the decision [21 So.2d at page] 162, as follows:
“ ‘ * * * defendant suggested, and his counsel during oral argument persist in the suggestion, that plaintiff crossed from the sidewalk of Wisteria street over the ditch connecting the roadway directly in the rear of his car at the time he started to back the vehicle. Of course, if this be true, there can be no doubt that plaintiff, aside from any fault on the part of the defendant, was guilty of gross contributory negligence which would unquestionably bar recovery.’ ”
As will be seen, the District Judge concluded that the injuries of plaintiff did not result from his having been struck by the car, and that if they were so caused, or if he fell against the curb as a result of the backing of the car, still the proximate cause of the accident and its unfortunate results was the contributory negligence of plaintiff himself in stepping from the curb to the street without making certain that no car was about to be backed into the open space which had just been vacated by another car.
The backing of Margiotta’s car was noticed by every one who was near except plaintiff himself. Had he paid the slightest attention he must have seen it and he would not have stepped from the curb directly into the spot towards which it was being backed.
The two cases to which the District Judge refers, Robichaux v. Toye Bros. Yellow Cab Co., 61 So.2d 264, and Neyrey v. Maillet, 21 So.2d 158, are decisions of this Court. In the Neyrey case we held the defendant liable because we found that the plaintiff was “standing directly in the rear” of defendant’s car when the backing movement of the car was commenced, and that defendant could not have failed to see plaintiff had he looked to the rear or into his rear view mirror before starting to back, and we found that plaintiff was not guilty of contributory negligence in being in that position, because she was not crossing the street but had been forced by local conditions to walk in it. In addition we said:
“ * * * we take notice of the fact that it is a common practice for persons congregating in public places for church meetings, lectures, sporting events and other gatherings to disperse into the city streets when the event has been concluded. * * * ”
Because of those conditions we held that the defendant was at fault in not looking to the rear and that plaintiff was not con-tributorily negligent.
In the Robichaux case [61 So.2d 265] the plaintiff was attempting to cross the street at a point customarily used by pedestrians in going from the entrance of what was then the Bienville Hotel to the point at which passengers boarded street cars. This point was almost directly opposite the entrance of the hotel and it might be expected that persons would cross from the sidewalk to the neutral ground at that point. Further *447 more, the taxicab of the defendant was not backing into the curb but was some distance out in the roadway. It had moved away from the curb as though it was about to depart entirely when suddenly its driver, “for some unknown reason,” reversed its motion and backed it into plaintiff who was attempting to cross behind it. There, too, we held that the plaintiff was not guilty of contributory negligence and that the cause of the accident was the negligence of the operator of the cab.
The essential facts in the case at bar bear little if any resemblance to those found in either of the cited cases.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.